IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
JURY TRIAL DEMANDED

Keith Brian Cruitt,

Plaintiff;

v.

CIVIL ACTION: 18-0119-KD-M

1.  City of Mobile, Alabama;
2.  Officer David C. Reyes;
3.  Nurse Terri Milton;
3.  James Barber, Public Safety Director;
4.  Lawrence Battiste, Chief of Police for City of Mobile, Alabama;
5.  Sam Cochran, Sherriff of Mobile County, Alabama;
6.  Sandy Stimpson, Mayor of Mobile, Alabama;
7.  Fredrick D. Richardson, Jr.; Levon C. Manzie; C.J. Small; John C. Williams; Joel Daves; Bess Rich; Gina Gregor; City Council Members of Mobile, Alabama;
8.  Shirlina Monterro, Prosecutor, City of Mobile, Alabama;
9.  A. Holmes Whiddon, Jr., Judge, City of Mobile, Alabama;
10. Noah Price Oliver, Warden, Mobile County Metro Jail;
11. City of Daphne, Alabama;
12. David Carpenter, Chief of Police Daphne, Alabama;
13. Dane Haygood, Mayor of Daphne, Alabama;
14. Tommie Conaway; Pat Rudicell; Joel Coleman; Doug Goodlin; Ron Scott; Robin LeJeune; and Joe Davis, City Council Members, City of Daphne, Alabama;
15. Sarah Boyd;
16. Jodi Boyd;
17. Helen Cagle;
18. State of Alabama; et al.;

Defendants.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

<u>COMPLAINT</u>

<u>The Law As It Relates To This Cause of Action</u>

1. In order to properly bring a federal civil rights complaint in this court, the plaintiff must: (1) allege that certain actions were taken against him that violated clearly established federal law as determined by the Supreme Court of the United States; and (2) demonstrate that there is sufficiently strict proof to prove the plaintiff's claims. Otherwise the claims would be dismissed before trial as frivolous or unsubstantiated.

2. The claims alleged by this plaintiff meet both the "clearly established federal law as determined by the Supreme Court of the United State test" and the "strict proof test," while also meeting the two-pronged approach set out by the Supreme Court of the United States regarding when its decision that made it permissible to combine civil rights [Tittle 42 § 1983] claims and ADA [Title II of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 337, 42 U.S.C. §§ 12131–12165] claims into a single complaint. (See the two cases cited as: (a) United States v. Georgia, 546 U.S. 151 (2006); citing: (b) Tennessee v. Lane, 541 U.S. 509 (2004).)

3. Under the United States v. Georgia, the Supreme Court made clear that monetary damages can be sought under the ADA whenever conduct or a course of conduct violates simultaneously constitution and the ADA. (See **United States v. Georgia**, 546 U.S. 151 (2006), wherein Justice Scalia, writing for the court, held that Title II of the ADA validly abrogates state sovereign immunity insofar as it creates a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment. Citing the court's precedence in United States v. Georgia and Lane, it has been universally held in the district courts of

our nation, and in each of circuit courts that: Title II monetary claims against a state for monetary damages require a showing of discriminatory animus or ill will on the part of the states, and hence limit such suits to disparate treatments against persons that violates the Equal Protection Clause or the Due Process Clause of the Fourteenth Amendment, or another federal rights such as those that extend from the Eighth Amendment (see United States v. Georgia). However, as to conduct that violates Title II of the ADA but not the Federal Constitution, the Courts must determine on a case-by-case basis whether the aggrieved conduct alleged falls within the range of conduct Congress could otherwise prohibit pursuant to its prophylactic authority under §5 of the Fourteenth Amendment. It should be noted that under United States v. Georgia, the Supreme Court made clearly established that claims alleging civil rights violations, i.e., Title 42 § 1983 claims, and Title II ADA claims, may be bound together whenever the actions of the defendants [their conduct and courses of action] simultaneously violate the 14th Amendment, i.e., the right to Due Process, to Equal Protection, and to life, liberty, or property, clauses, and hence in the instant complaint the broader Title II claims protected by the ADA need not be considered, because the entire course of conduct alleged and proven through audio/video tape evidence, falls within the scope of conduct protected by the constitution coupled with the ADA. The claim against the State here concerns that it has has failed to regulate the municipalities that exist within Alabama, and their police departments, and impose training upon that would have prevented the conduct to which this plaintiff was subjected. Title II of the Americans with Disabilities Act of 1990 (ADA or Act), 104 Stat. 337, 42 U.S.C. §§ 12131–12165, provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." § 12132.) This plaintiff [Keith Brian Cruitt] did (on April 15, 2017)employ Highway 90, the Interstate 65 road in Mobile, Alabama, and the Airport Boulevard road, in in Mobile, Alabama, in order to drive a vehicle; which this plaintiff alleges constitutes the kind of activity protected by Title II of the ADA, and by the 14th Amendment to the Federal constitution. This plaintiff was then stopped through the employment of emergency lights and carried to jail. As this plaintiff was being escorted from his vehicle, the arresting officer was noted that the plaintiff had urinated on himself. Inside the jail the arresting officer made fun of the plaintiff's medical conditions, sarcastically discussing them as if they did not exist; and arresting officer refused the plaintiff's requests to use the restroom to urinate, even after the plaintiff advised the arresting officer that he needed to use the restroom in in order to properly take the breathalyzer test. Instead the arresting officer lied that it was not proper procedure for this plaintiff to use the restroom before taking a breathalyzer test, and also lied that insisting on using the restroom would constitute a refusal to take the breathalyzer test. After the plaintiff used the restroom to urinate, which took no longer than three minutes, the arresting officer refused to administer the breathalyzer test, and then lied under oath that the plaintiff had refused to take the breathalyzer test. The arresting officers refusal to administer the breathalyzer test denied this plaintiff of exculpatory the evidence that the breathalyzer test would have provided him if had been properly administered, and hence the plaintiff was denied due process of law under the Fourteenth Amendment, and hence the case ought to be dismissed in municipal court[1], although this complaint does not seek to influence directly the criminal case. Rather than seeking to directly influence the municipal court criminal case (or the State case, the municipal cases is appealed to circuit court from municipal court for a jury trial), this plaintiff is seeking monetary damages for an incredible magnitude of monetary damage caused to him, and injunctive relief in order to prevent the kinds of complained about conduct from happening to the plaintiff again, and to other similarly situated persons. Because this plaintiff hereby waves any prejudice that might arise concerning his before mentioned criminal case by forthwith proceeding with this civil complaint before the criminal case is decided, this complaint is properly before this court jurisdictionally and in very other way, and the plaintiff requests that the case proceed forthwith on an accelerated basis on the ground that it will serve the interests of the defendants and this plaintiffs, given that each day the case is delayed, this plaintiff alleges that the hinderance actions taken by the city against him through prosecuting the instant cases has cost him $1-milliom dolls per day, and extraordinary sum of money that the plaintiff asserts that can prove with strict proof. This plaintiff's driv-

---

1. This plaintiff is not prosecuting the instant complaint as part of a preemptive defense against the criminal allegation of driving under the influence of alcohol, but rather is prosecuting directly the civil rights violations aspect of the arrest, abuse, and failure to properly collect evidence, i.e., the breathalyzer test, and the lie that Officer Reyes told that has caused the plaintiff to have his driver's license improperly suspended, that has been demonstrated against the plaintiff. This complaint further properly alleges that the criminal justice system created by the Municipality of the City of Mobile, Alabama was designed in a fashion that causes the Courts to fail to administer due process, which has caused this plaintiff's due process civil rights under the federal constitution to be violated, including retaliatory actions against this plaintiff by the said courts, which prove that the municipal courts are systemically defect. The city official, state and countyl defendants named together failed to properly train and supervise its judicial officers, i.e., judges and prosecutors, and further failed to properly train its police officers, which resulted in one of its police officers, Officer Reyes, to fail to recognize that it was even possible that the plaintiff was suffering from several medical conditions, not driving while intoxicated from alcohol. Had Officer Reyes properly treated the plaintiff by allowing him to use the bathroom to urinate, and allowing him then to properly submit to taking the breathalyzer test, the plaintiff would have no cause to complain. However, Officer Reyes failure has not only revealed a fundamental failure to train him, but has also revealed a fundamental defect in the municipal courts of the City of Mobile.

2

er's license has been "suspended" by the State of Alabama since this plaintiff was subjected to the false allegation by Officer Reyes that he had refused the breathalyzer test, and the suspension and the several arrests made against this plaintiff related to the criminal case that extend from the certain lies told by the arresting officer against this plaintiff have caused him extreme disruptions in the execution of this plaintiff's pursuit of a business plan.

### Facts and Claims of the Case

4. This plaintiff was subjected to an emergency light traffic stop on April 15, 2017 by Officer David C. Reyes. Officer Reyes claimed in his paperwork regarding this plaintiff's said traffic stop and arrest that he (Officer Reyes) had observed this plaintiff weaving all over the road just before he initiated his traffic stop against this plaintiff. This statement in the police report record is a false statement of material fact; however, the point is that plaintiff was engaged in an activity, i.e., driving on the roads together provided by the United States, the State of Alabama, and the City of Mobile, Alabama; roads that are roads policed by the City of Mobile, Alabama, and that this activity is an activity as the word "activity" is contemplated under Title II of the ADA; and, this plaintiff claims that, while he was engaged in this driving on a public entity's public road; an activity governed under Title II of the ADA, he, this plaintiff, was subjected to (by Officer Reyes) the kind of discriminatory conduct (and course of conduct) that Title II of the ADA seeks to remedy, and the kind of federal rights violations that Section One and Section Five of the Fourteenth Amendment to the Federal Constitution seeks to bar. The conduct complained about is listed as follows:

a. After Officer Reyes initiated his traffic stop against this plaintiff on April 15, 2018, but before Officer Reyes ordered the plaintiff to exit the vehicle he was driving, Officer Reyes first failed to inquire whether this plaintiff suffered from any medical conditions that might impair him from taking a field sobriety test.

b. Before this plaintiff was ordered to exit the vehicle he was driving by Officer Reyes on the date in question, Officer Reyes failed to inquire whether this plaintiff suffered any medical conditions or physical impairments that might impair prevent the plaintiff from walking from the vehicle the plaintiff was driving to the vehicle that Officer Reyes was driving. As the plaintiff exited the vehicle that he was driving, this plaintiff attempted to explain to Office Reyes the medical conditions and the physical impairments from which he suffers; however, Officer Reyes interrupted the plaintiff thereby refusing to listen to the plaintiff's statements; and, instead, Officer Reyes made fun of the plaintiff's statements through making sarcastic remarks regrading the plaintiff's statements regarding the medical conditions and physical impairments from which the plaintiff suffered.

c. After the plaintiff and Officer Reyes arrived to the Mobile Metro Jail's garage-like sally port, and as the plaintiff was being secured from Reyes' police cruiser vehicle, Officer Reyes stated that the plaintiff had urinated on himself. (See the beginning of Plaintiff's Exhibit Two, which is Officer Reyes' body camera video.) This plaintiff initially denied that he had urinated on himself, but the plaintiff had been feeling the urge to use the restroom since just before the traffic stop began. This plaintiff had urinated on himself before he was ordered out of the vehicle Officer Reyes was driving. What Officer Reyes did, when he stated that the defendant had urinated on himself, was to sarcastically make fun of this plaintiff for having urinated on himself. (See Plaintiff's Exhibit Two, Officer Reyes' body camera audio/video recordation.)

d. Officer Reyes escorted the plaintiff from his vehicle to an inside the jail sally port-like area located between the garage-like sally port and the jail's docket room; a location where arrestees are initially searched, photographed, sometimes secured, and where they are subjected to the administration of a breathalyzer test whenever a breathalyzer test is required by the charging instrument.

e. Once escorted by Officer Reyes to this interior sally port-like portion of the jail, this plaintiff immediately began requesting to use the restroom. Officer Reyes spent several minutes setting up the breathalyzer test, but this plaintiff was not allowed to use the rest room. Officer Reyes then yelled at this plaintiff that he would be refusing the breathalyzer test if this plaintiff continued to insist that he be allowed to use the restroom. This plaintiff, upon being threatened with being logged as having refused the breathalyzer test if he continued to insist that he be allowed to use the restrrom, relented and took the breathalyzer test twice. This plaintiff experienced extreme difficulty taking the breathalyzer test and trying to hold his urine simultaneously, and this plaintiff attempted to explain to Officer Reyes that, if her were first allowed to use the restroom, he would be more able to properly take the breathalyzer test. This plaintiff decided that he would be within his rights to require that he be allowed to the restroom, before taking the breathalyzer test a third time, given that this plaintiff did not believe he could hold his urine any longer and blow in the breathalyzer at the same time. Officer Reyes lied to this plaintiff by stating to him that should he continue to persist in

3

his demand to use the restroom before taking the breathalyzer test a third time that his persistence would constitute a refusal of the breathalyzer test. Upon this plaintiff's continued persistence that he be allowed to use the rest room, Officer Reyes stated that this plaintiff had in fact refused to take the breathalyzer test.; whereupon this plaintiff was immediately allowed to use the restroom. Upon his return from using the restroom, this plaintiff confronted Officer Reyes by asking him if he could now take the breathalyzer test. Officer Reyes replied by stating: "No. I'm good."

5. Officer Reyes violated this plaintiff's due process rights under the 14th amendment through is conduct of first disallowing this plaintiff from employing a bathroom in order to urinate in order that this plaintiff could properly take the breathalyzer test, and then second by refusing the plaintiff's request to take the breathalyzer test, after this plaintiff had used the restroom. After Officer Reyes refused to allow this plaintiff to take the breathalyzer test, this plaintiff stated to Officer Reyes that he had blown his own case [his defense in federal court] by refusing to allow this plaintiff to take the breathalyzer test. This plaintiff was correct when he informed Officer Reyes of his failure. This is true because Ala.Code 1975 § 32-5A-194 has made the breathalyzer test and other chemical tests a critical component of due process, regardless of whether the evidence collected by the chemical test is exculpatory or inculpatory to the case. The evidence on the body camera and on the jail's cameras offered by this plaintiff clearly show that the plaintiff was in distress because of his need to use the restroom to urinate, and that this plaintiff clearly expressed his need to use the bathroom to urinate before he could properly take the breathalyzer test. After the plaintiff used the restroom [immediately after Officer Reyes declared that this plaintiff had refused to take the breathalyzer test by persisting in his insistence that he needed to use the restroom to urinate before he could take the breathalyzer test], this plaintiff offered to take the breathalyzer test, but Officer Reyes refused to administer the test; which means that Officer Reyes committed three violations of the federal constitution by his actions of: (1) denying this plaintiff of the use of a bathroom to urinate; and of (2)denying this plaintiff the opportunity to properly take the breathalyzer test, after attempting to take the breathalyzer test on twice, and being unable to complete the test during his second attempt, because this plaintiff could not hold his urine and blow into the breathalyzer machine; and of: (3) making sarcastic remarks regarding this plaintiff's medical conditions, and his physical impairments. First, Officer Reyes recorded sarcasm regarding this plaintiff's medical conditions and his physical impairments demonstrate deliberate indifference to this plaintiff's medical conditions and impairments during the time from the point of his arrest [which is when this plaintiff's eighth amendment rights began] and throughout this officer's interactions with this plaintiff. Officer Reyes sarcastic attitude [which criminal justice experts haver documented a part of the culture of law enforcement generally] prevented Officer Reyes from comprehending that denying a prisoner in a jail of the use of a restroom in order to urinate in order that the prisoner may properly take a breathalyzer test is an 8th amendment [cruel and unusual punishment (condition) imposed] whenever the denial of access to a restroom to urinate prevents the prisoner [this plaintiff] from being able to properly take a breathalyzer test and secure exculpatory evidence for his trial on a charge of driving whirl intoxicated. This plaintiff could never have anticipated that Officer Reyes would have demonstrated such actual stupidity by refusing to administer a breathalyzer test to a prisoner after he had used the restroom that he had been literally pleading to use before he used it. The act of merely denying a prisoner access to a restroom to urinate could not by itself rise to a federal 8th amendment claim, but such an act coupled with the prisoner's need to use the restroom in order to take breathalyzer test in order that he could properly secure evidence for trial does [to a great degree] fail the minimum standard of conduct required by the federal constitution's 8th and 14th amendments. This mea ns that Officer Reyes was deliberately indifferent to both this plaintiff's right to be free from cruel and unusual punishment and from denial of due process; given that the administration of a breathalyzer test is part of the due process procedures in Alabama regarding DUI allegations, and Officer Reyes' superiors are certainly going to ask him: "Why didn't you just let him use the restroom and then give him the test. He said he would take it after he used the restroom, and he even offered to take the test after he used the restroom." The third federal constitutional rights violation extends from the plaintiff's right to liberty as a person operating a motor vehicle on the streets of the City of Mobile, Alabama. In Bell v. Burson, 402 U.S. 535, 29 L.Ed.2d 90 (1971), the Supreme Court held that the right to drive an automobile could can only be revoked through properly administered due process proceedings, i.e., "Once licenses are issued, as in petitioner's case, their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment. Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). This is but an application of the general proposition that relevant constitutional restraints limit state power to terminate an entitlement whether the entitlement is denominated a 'right' or a 'privilege.' Sherbert v. Verner, 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963) (disqualification for

4

unemployment compensation); Slochower v. Board of Higher Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956) (discharge from public employment); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (denial of a tax exemption); Goldberg v. Kelly, supra (withdrawal of welfare benefits). See also Londoner v. Denver, 210 U.S. 373, 385—386, 28 S.Ct. 708, 713—714, 52 L.Ed. 1103 (1908); Goldsmith v. United States Board of Tax Appeals, 270 U.S. 117, 46 S.Ct. 215, 70 L.Ed. 494 (1926); Opp Cotton Mills v. Administrator, 312 U.S. 126, 61 S.Ct. 524, 85 L.Ed. 624 (1941). This plaintiff suffers from several medical conditions or physical limitations, i.e., This plaintiff [on July 8, 2001] suffered a severely broken ankle [Garde III open fracture dislocation]; a set of injuries that included that the upper portion of this plaintiffs' left ankle was broken is three (3) places, and the lower portion of this plaintiff's left ankle was broken in three places, and the plaintiff's bones between the toes and the ankle of the left foot were torn from the plaintiff's left foot [dislocated], and these bones had to be reconstructed within the plaintiff's left foot. This alone (this plaintiff attempted to explain to Officer Reyes during the instant traffic stop) prevents this plaintiff from being steady on his feet, and causes the plaintiff to suffer from the fact that he "will always haver difficulty doing tasks tat require him to do [execute] fine ambulatory skills; meaning that this plaintiff cannot do the kind of toe-to-toe walking that police officers employ as "field sobriety tests." Further, this plaintiff attempted to explain during the arrest procedure that he has suffered from imbalance disorder that followed from a traumatic brain injury that occurred on June 6, 2012.

6. The plaintiff states that he was arrested on April 15, 2018, by defendant Officer David C. Reyes. In arresting the plaintiff, Officer Reye alleged that the plaintiff was weaving all over the road, that the plaintiff's eyes were blood shot when Officer Reyes confronted the plaintiff initially, that the plaintiff failed to follow Officer Reyes' instructions before he was arrested, that the plaintiff smelled of alcohol, that the plaintiff was unable to take a field sobriety test, and that the plaintiff was in possession of an open container of alcohol. The plaintiff alleges that these claims asserted by Officer Reyes are false, that the plaintiff was not diving while intoxicated from alcohol or any other substance, and that the plaintiff's physical condition that caused Officer Reyes to suspect that the plaintiff was intoxicated extended from medical conditions and treatments of medical conditions that were and are facts, that if Officer Reyes had not ignored and made fun of the plaintiff, and had Officer Reyes properly treated the plaintiff by allowing him to use the restroom to bathroom to urinate; and had Officer Reyes then properly administered a breathalyzer test, the fact of the plaintiff's sobriety would have been properly demonstrated and the plaintiff would NOT be forced to defend himself in a municipal court under the erroneous accusation that the plaintiff had illegally driven an automobile under the influence of alcohol. Because the defendant Officer Reyes did (this plaintiff claims with the strict provided by Officer Reyes body camera recordings and the Mobile Metro Jail's camera recordations) abuse this plaintiff in violation of the Americans with Disabilities Act regarding his medical conditions by making fun of them and disallowing the plaintiff to use the restroom, the plaintiff was denied access to a properly administered breathalyzer test in violation of Title 42§ 1983.[1]

7. The said officer ignored the plaintiff's statements that he suffered from "traumatic brain injury," and that the brain injury had resulted in the plaintiff suffering from imbalance disorder (also known as "imbalance syndrome"), and that the plaintiff suffered from a previously imposed "broken ankle," which meant that: I could never perform a normal roadside sobriety test. (See Plaintiff's Exhibit Three and Plaintiff's Exhibit Four, which are letters from medical doctors, and see the plaintiff's affidavit.)

8. The officer also ignored the plaintiff's statements that the "glaucoma" eye drops employed by the plaintiff for the treatment of glaucoma causes bloodshot eyes.

9. The said officer further ignored the plaintiff's statements that the prior broken ankle combined with prior brain injury resulting in imbalance disorder causes the plaintiff to present with instability on his feet.

10. The passenger in the plaintiff's automobile (Sarah Sonni Boyd Brade Ford) had (against the plaintiff's instructions, and before the traffic stop) opened one of six bottled beers that had been recently purchased by the plaintiff at a grocery store, along with groceries, for the passenger; and the purpose of the plaintiff to be driving at the time of his arrest was to carry the passenger to the place of employment of the passenger's boyfriend and acquire funds from him to repay the plaintiff for the groceries and other items that he had purchased for the passenger. The passenger placed the beer that she open in one of the vehicle's cup holder's, and the plaintiff could not simply order the passenger out of his vehicle on the interstate, or in the middle of Airport Boulevard. Indeed, drinking alcohol while a person is a passenger in an automobile is very common among beer drinkers, which is why convenience stores are permitted (by law) to sell single beers. The passenger had previously finished another beverage that the passenger had entered the vehicle with when she was picked up by the plaintiff that had appeared to the plaintiff to be a soft drink, but that the passenger later admitted was actually "a cocktail-in-a beer-can-like-container," which is also purchasable in a single

5

container at a convenience store. This empty "cocktail in a beer-can-like container" was also in one of the vehicle's cup holders when Officer Reyes approached the vehicle, and when it was searched by other officers. Although, this may have been a perfect storm (as the saying is) for Officer Reyes to fail initially to recognize that the instant plaintiff was suffering from medical conditions, not criminal intoxication, this error could have been properly remedied by him had he not abused the plaintiff regarding his medical conditions, and regarding refusing to allow the plaintiff to use the bathroom to urinate before he took the breathalyzer test. Once at the Mobile County Metro Jail, Officer Reyes had every opportunity to properly treat the plaintiff, allow him to use the bathroom to urinate, and then properly administer the breathalyzer test in order to reasonably determine whether the instant plaintiff was intoxicated or not. Further, the State of Alabama has failed to regulate the municipal courts in Alabama and the municipal police departments, as has the United States of America defendant; which has allowed the instant violations of rights to arise. The issues raised herein are civil in nature and are separate from the criminal case, and this court has jurisdiction to immediately proceed regarding them, just as if this court were asked to hear a case regarding a prisoner arrested for murder that was shot in the back while handcuffed and shackled and while lying unconscious and motionless in the back of a patrol car. This complaint is not that serious but it is serious enough. This plaintiff was denied access to his father's company during much of the last several months of his life, was denied the right to drive, and was deprived of income that was likely in the millions of dollars.[2]

11. The plaintiff began to experience urges to urinate before he had exited Interstate-65 onto Airport Boulevard before he was stopped by Officer Reyes on the day in question. While on the interstate, and after exiting onto Airport Boulevard, the plaintiff drove normally and did not demonstrate any erratic driving conduct before reaching a red light at the top of the bridge of the west bound lane of Airport Boulevard. While stopped at the red light, the passenger dropped her cell phone between the console and the plaintiff's side [the driver's side] of the console , while stopped at the said red light at the top of the bridge of the said westbound lane of Airport Boulevard on the night of the day in question. The plaintiff was thereby distracted by the task of assisting the passenger with recovering the said cell phone from between the seats when the red light turned green. As a result of this "cell phone between the seats" distraction, the plaintiff failed to timely pull away from the red light after it turned green. Several cars passed the plaintiff's vehicle on the right (some traveling very quickly) before the plaintiff began to cause the vehicle he was driving to move away from the said red light while in the left lane, which meant that the automobiles to his right were passing him at approximately 30-miles per hour, and the plaintiff felt urgency to move away from the red light that had become green; after the horn of the vehicle behind him blew several times. The plaintiff then quickly but safely accelerated away from the red-light (now green), traveled a short distance, and pulled into the first left hand turn lane on Airport Boulevard. After the plaintiff entered the said turn left turn lane, he noticed that he was being subjected to the emergency lights of a police vehicle, which turned out to be the emergency lights of the arresting officer, Officer Reyes.

12. The arresting officer carried the defendant to the Mobile County Metro Jail, where the plaintiff's statement regarding his medical conditions were NOT merely ignored, but were joked about by the said arresting officer. (See exhibits marked as Plaintiff's Exhibit One and Two.)

13. The plaintiff announced to the correctional officer, immediately upon arriving into pre-booking intake "search area" of the jail, that he needed to use the restroom to "take a piss," more formally known as urinating.

14. This Jane Doe correctional officer initially advised the plaintiff that he would be allowed to use the rest room as soon as he was searched. As soon as the plaintiff was searched, the said arresting officer however overruled the correctional officer and DENIED this plaintiff's request for access to a bathroom in order to urinate. The correctional officer sated: "Do what the officer says."

15. The plaintiff initially requested, even demanded that he be allowed to "take a piss, " or urinate, but the said arresting officer demanded that the plaintiff first take a breathalyzer test. The plaintiff attempted to take the breathalyzer test, but the arresting officer alleged that the plaintiff had failed to properly take the test. The plaintiff advised the arresting officer that he would be aided in his efforts to take the breathalyzer machine if he were allowed to use the restroom. The plaintiff repeatedly persisted in his efforts to use the restroom. The plaintiff again attempted to take the breathalyzer test, but the arresting officer stated again that this plaintiff had failed to properly take the test. The plaintiff persisted in his effort to use the restroom, including that the plaintiff told the arresting office that he would be aided in his efforts to take the said test if he were allowed to use the restroom. The plaintiff was told by the arresting officer that his use of the restroom would constitute a refusal to take a breathalyzer test.

16. The plaintiff also repeatedly requested to a Jane Doe correctional officer that he be allowed "to take a piss," at one point

the correctional officer demanded that plaintiff follow the arresting officer's instructions to blow in the breathalyzer a third time.

17. The arresting officer and several of his colleague officers made jokes about this plaintiff's assertion that he would complain to Federal Court concerning the arresting officer's conduct, and concerning that the correctional officer was violating his Federal Constitutional rights. The plaintiff was told by the arresting officer that by demanding to use the rest room the plaintiff "had refused to take a breathalyzer test"; immediately after which this plaintiff was allowed to use the restroom. Upon using the restroom, the plaintiff offered to take the breathalyzer test; however, the arresting officer stated to plaintiff that the plaintiff had already refused the breathalyzer test. The plaintiff responded to the arresting officer that he knew the law, that the officer had blown his case, and that the plaintiff was going to take the officer to Federal Court. The arresting officer falsely stated in his official paperwork that the plaintiff had refused to take the breathalyzer test. This false claim caused the plaintiff's driver's license to be suspended.

18. The arresting officer seized the plaintiff's driver's license, and arresting officer joked about his conduct of having seized the plaintiff's driver's license, as if depriving a person of his driver's license is fun part of his job.

19. The claims made by this plaintiff in this complaint regarding the actions of the arresting officer after the plaintiff was brought to the Mobile County Metro Jail were recorded by the jail's audio/video system, and by the arresting officer's body camera (although the officer wore it upside down), which this Court has in its possession marked as: Plaintiff's Exhibit One and Plaintiff's Exhibit Two.

20. The plaintiff asserts that the exhibits that have been made a part of the instant complaint (Exhibits One and Exhibits Two) are audio/video recordations that prove that the plaintiff was subjected to above referenced conduct, and he asserts that this conduct violates Title 42 and Title 47 of the United States Code, known as the Americans with Disabilities Act, of 1990 (ADA), including changes made by the ADA Amendments Act of 2008 (P.L. 110-325); and Title 42 1983, (R.S. § 1979; Pub. L. 96–170, § 1, Dec. 29, 1979, 93 Stat. 1284; Pub. L. 104–317, title III, § 309(c), Oct. 19, 1996, 110 Stat. 3853.) Codification R.S. § 1979 derived from act Apr. 20, 1871, ch. 22, § 1, 17 Stat. 13); because this plaintiff was subjected conduct that caused him to be: "diminished [in his right to fully participate in all aspects of society," to wit: his right to drive and then be properly tested for alcohol/drug impairment accusations, without being subjected to civil rights violations, i.e., subjected to verbal abuse regarding his medical conditions; refusal to allow the plaintiff to use the restroom, even after he two times took the breathalyzer test, and allegedly failed to properly take a breathalyzer test; which caused him to be denied the exculpatory evidence that the plaintiff asserts would have been provided by the breathalyzer test had the plaintiff been allowed to properly take the breathalyzer test. The plaintiff asserts that he has been subjected to pain and suffering as a result of driver's license having been improperly suspended.

21. This plaintiff was subjected to "discrimination" after having a "record of a disability." Nurse Terri Milton, RN, examined the plaintiff following the abuse and the plaintiff's booking into the jail, and she declared to the plaintiff that he was clearly not intoxicated, but she also said that, in her position as a "jail nurse," she could NOT testify for the plaintiff in criminal trial; because her superiors would not allow her to contradict a police officer; a fact that this plaintiff alleges itself constitutes a civil rights violation and an ongoing conspiracy to violate this plaintiff's civil rights, including his right to enjoy exculpatory evidence in municipal court during a criminal proceeding.

22. The City of Mobile, Alabama; the Chief of Police for Mobile County, Alabama, the Sherriff of Mobile County, Alabama, and the Mayor of Mobile, Alabama, and the City Council of Mobile, Alabama,; and the Correctional Warden failed to provide funds and secure proper training for the said arresting officer and the Jane Doe correctional officer regarding how to treat persons with medical conditions in a fashion that does not violate federal law concerning persons with disabilities at all times following the enactment of the ADA until this plaintiff was arrested on April 15, 2017.

23. The City of Mobile and the State of Alabama failed to properly train the said arresting officer regarding how to administer a breathalyzer test at all times prior to the plaintiff's arrest on April 15, 2017.

24. The City of Mobile, Alabama failed to create a court that complies with the due process provisions of the Federal Constitution, including that the Court does not keep records of its proceedings, nor does it possess a Rules of Court to which the city must comply that could possibly meet the due process provisions of the Federal Constitution. The plaintiff was served NOTICE that he was docketed for ARRAGNMENT on April 3, 2018. After having already been granted leave to proceed pro se, the defendant filed a

7

motion waiving arraignment, and requesting that a hearing be scheduled to consider a previous motion for additional discovery, and to dismiss the case based on the facts stated in this complaint. This plaintiff had already learned from a clerk of the said court that such motions are typically granted.

25. The Municiple Court DENIED the motion to waive the second or third arrangement, and  instead a WARRANT for this plaintiff's arrest was issued alleging that he had failed to appear in court for a waived arraignment; even after he had been previously arraigned on the case. The plaintiff alleges that the decision of the Municipal Court constitutes retaliation against the plaintiff because he had filed this suit against the City of Mobile. The judge in the case also ordered that this plaintiff be actively pursued (an administrative ORDER) that caused THE Police Department of the City of Daphne to come to the plaintiff's home video tapes submitted to this Court (see the exhibits marked one and two) prove the plaintiff's case with strict proof, and the city has refused to take notice of its own evidence in this plaintiff's favor. Normally, it would be true that judges and prosecutors are immune from lawsuits, but the provisions of the Americans with Disabilities Act specifically waives State (and city) sovereign immunity; and, as the plaintiff has pointed out, the Municipal Court in the City of Mobile including its judges, prosecutors, its mayor, its city attorney, its council members, and the State of Alabama have not created actual courts under the federal constitution's provisions regarding due process, and hence none of these parties should fall under the immunity provisions normally afforded judges and prosecutors and the other herein named parties.

26. The City of Mobile failed to train Officer Reyes regarding how to go about properly treating persons who suffer disabilities such as those from which the plaintiff suffers, as the experiences cited herein amply demonstrates, and hence this plaintiff was NOT properly treated regarding his medical conditions and disabilities immediately after the traffic stop , or once the plaintiff had arrived at the jail. In the alternative, the City of Mobile did properly train officer Reyes regarding how to properly treat persons with disabilities such as those suffered by the plaintiff, and officer Reyes simply ignored his training immediately after the traffic stop and after the plaintiff had been brought to the jail.

27(a). The State of Alabama did not properly regulate the Municipality of Mobile, Alabama and did not appropriate monies to ensure that the said city would properly train its police officers, at all times prior to the plaintiff's arrest on April 15, 2018.

27(b). The State of Alabama did properly regulate the City of Mobile Alabama and did provide funds to ensure that the ADA was complied with by its police officers, but the said city failed to adhere to the state's regulations, and it failed to properly train its officers to comply with the ADA, and Officer Reyes had no knowledge that he should adhere to the provisions of the ADA when conducting traffic stops regarding persons suspected of having committed violations of the city's traffic ordinances.

28. The State of Alabama failed to regulate its municipal courts and cause them to fall within the provisions of the Constitution of the United States regarding due process of law and equal protections of the law, as clearly established by the Supreme Court of the United States, or like would be provided by the Supreme Court, including the established civil rights provisions that extend from the Americans with Disabilities Act, at all times between the plaintiff's arrest on April 15, 2017, and the date of the execution of this complaint. This is true because at all times since this plaintiff notified the instant court of the fact that Officer Reyes had violated this plaintiff's rights (beginning on the 5th day of May 2017) and ending on the date of the execution of this complaint, the said court has failed to take judicial notice of these violations

29. The section of the ADA cited as: "Section 504" of the ADA, states, in pertinent part, as follows:

"No otherwise qualified individual with a disability in the United States, as defined in section 705(20) of this title, shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service."

30. Contrary to the provisions of the ADA, however, the agency, and the agent, i.e., Officer Reyes, discriminated against this plaintiff and assumed that the disabilities from which he suffered had not caused the conduct that he mistook as "intoxication." He then added false statements to his reports in order to cover up his failures. This worked to deprive this plaintiff of his right to drive, caused him to be deprived of his liberty, caused him to be denied the right to earn income, and caused him to be deprived of medical care. This lawsuit constitutes a combination lawsuit wherein the ADA violations and the Civil Rights violations {Title 42 § 1983] are combined in order to acquire both monetary damages and injunctive relief. The prosecution of combination lawsuits such as

the one hereby submitted constitute a form of prosecution that constitutes clearly established federal law as determined by the Supreme Court of the United States.

32. The police of the City of Daphne, Alabama, on the administrative ORDER of the instant judge in this case came to this plaintiff's home and arrested him without a warrant in violation of Ala.Code 1975 § 15-10-10 Ala.Code 1975 § 15-10-11, and contrary to clearly established Alabama Supreme Court law (see Ex parte James Henry BORDEN, Jr , 769 So.2d 950 (2000), and this plaintiff was carried to the Mobile/Baldwin county, Alabama line and handed transferred to the custody of a City of Mobile police officer. This action not only a civil rights violation on the part of the Daphne police, but was an administrative act and civil rights violation about which a judge carries no judicial immunity.

## RELIEF SOUGHT

31(a). The plaintiff was delayed in publishing his physics theory, i.e., the Unified Field Theory of Everything, also known as "The Xgravity-fluid, Photon-particle, Neutrino-particle Interaction-model," which the plaintiff values at $100-billion dollars; and because the plaintiff has been subjected to pain, suffering, and humiliation, the plaintiff seeks all the monetary relief to which he may be entitled, after a jury has been presented with the proof of wrongful conduct and proof of loss of income caused by the wrongful conduct.

32(b). The plaintiff seeks any and all injunctive relief that may be appropriate in order to prevent further occurrences of the kind of conduct complained about herein, which may be fashioned in numerous different ways.

## ATTORNIES FEES

23. The plaintiff is representing himself, and seeks attorney's fee respective to his loss of income, or $300.00 dollars per hour, whichever is greater.

## SWORN TO UNDER PENATIES OF PERJURY

The plaintiff states under the penalties for perjury provided for by the laws of the United States that the foregoing is true and correct.

Done this _5_ day of June, 2018.

Respectfully submitted,

Keith B. Cruitt
333 Ridgewood Drive
Daphne, Alabama 36526
251-229-1758

9

Plaintiff's Exhibit One

(**Audio/Video Tape**: Cruitt Keith Brian 4-15-2018 — Camera 4 (2).exe Jail Video)

Plaintiff's Exhibit Two

(**Audio/Video Tape**: Cruitt Keith Brian 4-15-2018 breathalyzer test Officer Reyes body camera upside down.mp4

Plaintiff's Exhibit Three



Rhett Hubley, M.D.

John L. Todd, M.D.

George A. Corbett, M.D.

Paul B. Canale, M.D.

John Andrew Harcourt, M.D.

Matthew W. Goldman, M.D.

Michael Chamblee, M.D.

Patrick Dunn, PA-C

Seneca Walden, CRNP

Shireen Knowles, CRNP

Chuck Carlisle
Administrator

1505 Daphne Avenue
Daphne, AL 36526
251-625-(BONE)2663
251-625-3198 Fax

Additional offices available in:
Bay Minette
Orange Beach

www.baldwinboneandjoint.com

March 23, 2018

RE:   Cruitt, Keith #1044249_17
      Date of Birth:  07/26/1958

To Whom It May Concern:

Mr. Cruitt is a fifty-nine-year-old gentleman who sustained a severe injury to his left ankle.  He had an open fracture dislocation involving his subtalar joint, as well as the talonavicular joint, as well as the cuboid.  He had open reduction, internal fixation and is doing reasonably well; however, he has a shortened ankle with arthrosis.  He will always have difficulty doing tasks that require him to do fine ambulatory skills.

If I can be of any further assistance, I will be happy to do so.

Sincerely,

George "Drew" Corbett, MD

GAC/jk.VN819099

13

Plaintiff's Exhibit Four

14

# Alabama
## Medical Group, P.C.

101 Memorial Hospital Dr., Suite 200, Mobile, AL 36608

> alabamamedicalgroup.com
> 251.414.5900

**ENDOCRINOLOGY**
Judson K. Menefee, M.D., F.A.C.E.

**FAMILY MEDICINE**
Mark C. Wiles, M.D.
Patrick L. Murphy, Jr., M.D.

**GASTROENTEROLOGY**
Susan B. Fleet, M.D.
Jonathan D. Siegel, M.D., F.A.C.G.
Cody B. Barnett, M.D., F.A.C.G.
Michael K. Sanders, M.D., F.A.S.G.E
Panaylotis P. Grevenitis, M.D.

**INTERNAL MEDICINE**
H. Morgan Ashurst, M.D.
Donald B. Sanders, M.D.
Edward G. Carlos, M.D.
Alan R. Shain, M.D.
Lisa B. Burch, M.D.
Amy D. Strassburg, M.D.
Desiree A. Soter-Pearsall, M.S., M.D.
J. Gray Arnold, M.D.
Clare K. Carney, M.D., Ph.D.
Genevieve I. McLeod, M.D.

**NEUROLOGY**
Hayden C. Long, M.D.
Tiffany P. Long, M.D.

**RHEUMATOLOGY**
Deepak Kumar, M.D.

April 11, 2018

To Whom It May Concern:

RE: Keith Cruitt

Mr. Cruitt was diagnosed with traumatic brain injury and balance disorder. He uses a walking can to assist him with maintaining his balance. Mr. Cruitt has been prescribed Meclizine as needed to assist him with maintaining his balance, which he says helps him with the nausea and balance.

Sincerely,

Hayden Long, MD

15

Plaintiff's Exhibit Five

# PREMIER MEDICAL

## EYE · EAR · NOSE · THROAT

3701 Dauphin St.
Mobile, AL 36608
251-341-3368

www.pmg.md

Stuart F. Ball, MD
Jay A. Brown, MD
Ryan C. Burton, MD
Mark J. Douglas, MD
Richard J. Duffey, MD
Robert E. Edge, OD
Curtis M. Graf, Jr., MD
Joseph C. Harrell, OD
James M. Harrison, Jr., MD
Gregory R. Jackson, OD
Charles F. Jones, MD
Ben F. King, IV, OD
Jeffery A. Morrow, OD
Charles S. Mosteller, MD
Matthew W. Mosteller, MD
Charles R. Salisbury, MD
H. Christopher Semple, MD
Andrew P. Terry, MD
Rollins L. Tindell, Jr., MD
J. Ryan Turner, MD
Valerie L. Vick, MD, FACS
Christopher J. Walton, MD
Claude M. Warren, III, MD

Kimberly A. Elliott, MD
J. Mark Harrison, MD
Michael Rhodes Lee, MD
Andrea B. McMurphy, MD, FACS
Alfred M. Neumann, Jr., MD
Richard L. Palesano, MD
James K. Pitcock, MD
James R. Spires, Jr., MD
Ron Swain, Jr., MD, FACS, FARS
John S. Wilson, MD
Brian P. Sullivan, MD

April 11, 2018

RE:      Keith Cruitt
DOB:     07/25/1958
PM ID:   827821

To Whom It May Concern:

Keith Cruitt is a patient of mine who suffers from absolute glaucoma of the left eye. I saw him originally on Aril 15, 2017 for severe pain in the left eye. The pain was severe and he was getting no relief. He was suffering from traumatic iritis in his blind eye. He has been prescribed three types of glaucoma drops which will cause redness in his eyes.

If you have any questions, please feel free to call me.

Sincerely,

Curtis M. Graf, Jr., M.D.

CMGjr/clb

17